IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHARON RENAE MAXWELL            :

    v.                              : Civil Action No. DKC 2005-2107

SAVIN CORPORATION               :

                                          :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case is the motion of Defendant Savin Corp. to dismiss or, in the alternative, for summary judgment (paper 18). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, the court will grant Defendant's motion, albeit with leave to amend in part.

**I.  Background**

The following facts are either undisputed or viewed in the light most favorable to Plaintiff Sharon Renae Maxwell.  Plaintiff, an African-American female born on August 5, 1958, began working for Defendant in March 1991 as a Senior Dispatcher in the Service Department of Defendant's Rockville, Maryland, location.  Plaintiff was promoted to Lead Dispatcher in 1994, and, that same year, applied for and received the position of Aftermarket Coordinator. In 1998, Plaintiff was promoted to Senior Aftermarket Sales

Representative.[1]  Plaintiff states that in 1998, new management was brought in, and sales representative positions were restructured. The result of the restructuring was that half of the sales representatives, including Plaintiff, were placed in "Supply Representative" ("SP Rep") positions while the other half of the sales representatives were placed in "Maintenance Representative" ("MA Rep") positions.[2]   MA Reps receive a higher base salary (approximately $2,000.00) than SP Reps and also have "stable compensation plans," unlike SP Reps.  Plaintiff asserts that all of the MA Rep positions were filled with white employees.

In July 2002, Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Montgomery County Office of Human Rights ("MCOHR").[3]  Plaintiff alleged in her administrative complaint that Defendant subjected her to different terms and conditions of employment because of her race.  Plaintiff asserted that the annual base salary of MA Reps was higher than

---

[1] Defendant appears to dispute that Plaintiff was promoted into a *Senior* Aftermarket Sales Representative position.  Defendant states that in 1998, Plaintiff became a "Supply Representative in the Aftermarket Sales Department."  (Paper 18, at 4).

[2] Although in her complaint Plaintiff implies that this restructuring happened in 1998, Plaintiff states in her administrative complaint that the position restructuring occurred in 1999.  (Paper 18, ex. 3, at 1).

[3] Plaintiff alleges in her complaint that she filed administrative charges on July 3, 2002, but the administrative complaint attached to Defendant's motion (paper 18, ex. 3) is dated September 27, 2002.

that of SP Reps, MA Reps receive more favorable commission structures, and work hours of MA Reps are more flexible than those of SP Reps (Paper 18, ex. 3, at 1).

After filing the administrative charge, Plaintiff and Defendant agreed to mediate the dispute.  Mediation occurred on January 16, 2003.  At the end of the mediation, the parties signed a written agreement indicating that they would meet in one week.  At that point, Plaintiff would have "the opportunity to accept or decline the offer of being changed to a grade R3 in her current position." (Paper 18, ex. 4).  Although it is not entirely clear what transpired next, it appears that further communications between the parties led to Plaintiff's placement in a higher salary grade, retroactive to April 2002.  Plaintiff states in her affirmation (paper 25, at 3) that these benefits were a preliminary offering and that Defendant knew her acceptance of the benefit did not end the "legal battle."[4]

On October 27, 2004, the MCOHR issued a "Letter of Determination" finding that there were no reasonable grounds to believe that Defendant had engaged in unlawful discriminatory practices.  (Paper 18, ex. 5).  Plaintiff appealed to the Montgomery County Commission on Human Rights, which affirmed the

---

[4]  Plaintiff attaches to her opposition memorandum a "Mediation Transmittal Form," which appears to have been sent to the MCOHR on March 16, 2003, from Mr. Joseph Kopyto, the mediator at the January 16, 2003, meeting.  The form indicates that mediation was unsuccessful.  (Paper 25, ex. 11).

decision of the MCOHR on March 31, 2005.  (Paper 18, ex. 6).  On May 3, 2005, the EEOC issued a "Dismissal and Notice of Rights," which stated that the EEOC was closing its file on Plaintiff's charge because it had adopted the findings of MCOHR.  (Paper 18, ex. 7).

Plaintiff, proceeding *pro se*, filed a complaint on August 2, 2005, pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*  Although the case initially was assigned to Judge Titus, the case was reassigned to the undersigned on February 15, 2006.

Plaintiff alleges that Defendant discriminated against her on the basis of race and age.  In support of her claim, Plaintiff states that Defendant failed to promote her and that: "positions [she] applied for were left unfilled or were filled with non applicants while [she] was not given an interview."  Plaintiff also claims that Defendant "subjects [her] to continuing different terms and conditions of employment due to [her] race."  In the "fact" section of her complaint, Plaintiff alleges the following: "I was/am demoted in pay status, title and other areas of employment. I suffer continuing discrimination and disparate treatment due to my race as well as retaliatory acts due to my actions to halt the practices."  Plaintiff requests injunctive relief, back pay,

4

reinstatement to her "former position," $5,000,000 in damages, and costs and attorneys' fees.[5]

On November 29, 2005, the case was dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m) for Plaintiff's failure to serve Defendant.  (Paper 7).  On December 5, 2005, Plaintiff filed a motion for reconsideration (paper 8), asking the court to re-open the case.  On December 6, 2005, the court granted Plaintiff's motion and issued an Order vacating its November 29, 2005, Order. (Paper 9).  Defendant filed a motion to dismiss, or in the alternative, for summary judgment, on February 24, 2006.  (Paper 18).

Plaintiff is not entirely clear in her complaint as to what actions on the part of Defendant provide the basis for her discrimination claim.  Nevertheless, the court will attempt to construe Plaintiff's complaint liberally and address all potential bases for the alleged discrimination. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (noting that pleadings by *pro se* litigants are subject to "less stringent standards").  Plaintiff appears to allege that Defendant discriminated against her on the basis of age and race in the following ways: (1) by failing to promote her; (2) by demoting her and reducing her pay and benefits; (3) by subjecting her to less favorable terms and conditions of

---

[5] It is not entirely clear to which former position Plaintiff wishes to be reinstated.

employment; and (4) by retaliating against her due to her "actions to halt the [discriminatory] practices."

Defendant construes Plaintiff's complaint as alleging only that she was discriminated against when Defendant demoted her to the position of SP Rep and thereafter subjected her to different terms and conditions of employment as compared to individuals in the MA Rep position.[6] Defendant presents five arguments in support of its motion: (1) Plaintiff's discrimination claim was untimely because of her failure to serve Defendant within 120 days of filing the complaint; (2) Plaintiff failed to exhaust her administrative remedies because she presents an age discrimination claim that exceeds the scope of her administrative charge;(3) Plaintiff was untimely in filing her administrative complaint; (4) Plaintiff fails to state a claim of discrimination; and (5) Plaintiff's claims are barred by her settlement agreement with Defendant.

## II.  Standard of Review

It is today reasonably clear that neither a failure to exhaust administrative remedies based on untimely administrative filings nor the failure to file a complaint within 90 days of receiving the EEOC's right-to-sue letter is an issue of subject matter jurisdiction.   Therefore, with regard to timeliness issues,

---

[6] As noted, Plaintiff also appears to assert in her complaint that she was discriminated against when she was denied a promotion and when she was retaliated against.  The court also will address both of these allegations in its analysis. *See Haines*, 404 U.S. at 520.

Defendant's motion is not governed by Fed.R.Civ.P. 12(b)(1). *See Arbaugh v. Y&H Corp.*, 126 S.Ct. 1235, 1242 (2006) (noting that "in recent decisions, [the Court has] clarified that time prescriptions, however emphatic," are not jurisdictional); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990) (stating that the time period for filing a civil suit after receiving a right-to-sue letter is subject to waiver and equitable tolling and thus, is not jurisdictional); *Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006) ("The [defendant's] argument that [the plaintiff's] religious discrimination claim was untimely is not an argument challenging the district court's subject-matter jurisdiction to hear the claim.").

Where the exhaustion issue is whether Plaintiff's claims exceed the scope of the EEOC claim, the proper treatment is not as certain:

> It is axiomatic that a claimant under Title VII must exhaust his administrative remedies by raising his claim before the EEOC. *See Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) ("Where . . . claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred."). This requirement is variously referred to as a jurisdictional prerequisite to adjudication in the federal courts, a procedural prerequisite to bringing suit, and a requirement that a claimant exhaust administrative remedies.

*Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 148-49 (4th Cir. 1999).[7] If the issue is one of subject matter jurisdiction, the motion is governed by Fed.R.Civ.P. 12(b)(1) and a court can consider matters outside of the pleadings in its analysis without converting the motion to one for summary judgment. However, if the issue is characterized more properly as one of a failure to state a claim, a court may consider only the pleadings unless it converts the motion to one for summary judgment. For this case, however, it is not necessary to resolve the issue. Regardless of whether the issue is characterized as one of subject matter jurisdiction or failure to state a claim, the materials before the court sufficiently resolve the issue and the result would be the same.

## A. Motion to Dismiss

A 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement

---

[7] At least one district court judge within the Fourth Circuit has recognized and discussed the various court approaches in detail. *See Monk v. Stuart M. Perry, Inc.*, No. Civ.A. 5:01CV00093, 2002 WL 1397018, at *2 (W.D.Va. June 13, 2002) (unpublished opinion).

of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## B.  Motion for Summary Judgment

It is well established that a motion for summary judgment will be granted only if: (a) there exists no genuine issue as to any material fact and (b) the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that these two conditions are met. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997).

Defendant has moved to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), or alternatively, for summary judgment under Fed.R.Civ.P. 56. A court considers only the pleadings when deciding a Rule 12(b)(6) motion. Where the parties present matters outside of the pleadings and the court considers those matters, the court will treat the motion as one for summary judgment. *See Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Pauktis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 556 (D.Md. 2003).

## III.  Analysis

## A.  Motion to Dismiss

## 1.  Untimely Filing of Civil Action

Defendant asserts that Plaintiff's claim is rendered untimely because she failed to serve Defendant within the requisite 120-day time period provided for in Fed.R.Civ.P. 4(m).

Title VII plaintiffs have a ninety-day period following receipt of a right-to-sue letter to file their claim.  42 U.S.C. § 2000e-5(f)(1).  The EEOC issued a right-to-sue letter to Plaintiff on May 3, 2005.  Although it is unclear when Plaintiff actually received the letter, the presumption is that Plaintiff received it within three days.  Thus, the 90-day filing period began on May 7, 2005.  *See* 29 C.F.R. § 1614.604(d) ("The first day counted shall be the day after the event from which the time period begins to run . . . .").  Plaintiff timely filed her civil claim on August 2, 2005.

Although Defendant concedes that Plaintiff filed the claim within the 90-day period, it asserts that Plaintiff's failure to serve Defendant within 120 days rendered her claim untimely. Defendant states that it was not served until 175 days after the complaint was filed, on January 24, 2006, and argues that the 90-day statute of limitations began running again after the expiration of the prescribed 120-day limit for service.

Fed.Civ.P. 4(m) states, in relevant part:

> If service of the summons and complaint is not
> made upon a defendant within 120 days after
> the filing of the complaint, the court, upon
> motion or on its own initiative after notice
> to the plaintiff, shall dismiss the action
> without prejudice as to that defendant or
> direct that service be effected within a
> specified time; provided that if the plaintiff
> shows good cause for the failure, the court
> shall extend the time for service for an
> appropriate period.

On November 9, 2005, because service had not been effected, Judge Titus's courtroom deputy clerk sent a letter noting that the court was not in receipt of a request by Plaintiff for the issuance of new summons or a request for waiver of service as to Defendant. (Paper 6). The letter instructed Plaintiff to advise the court of her intention with regard to the further issuance of process. The letter noted that Fed.R.Civ.P. 4(m) requires service to be made on Defendant within 120 days after filing the complaint and warned that a failure to comply could result in a dismissal. The letter also stated that Rule 4(m) allowed the court to extend the time for service "if the plaintiff shows good cause for the failure." The letter directed Plaintiff to reply on or before November 23, 2005. Plaintiff did not respond to the letter and, pursuant to Rule 4(m), Judge Titus dismissed the case without prejudice on November 29, 2005. (Paper 7).

On December 5, 2005, Plaintiff filed a motion for reconsideration of the court's dismissal. (Paper 8). Plaintiff stated that she did not receive the November 9, 2005, letter

instructing her to respond before November 23, 2005, and that "[a]lso contributing to the oversight [(i.e., failure to serve Defendant)] was the information obtained through counsel, which stated [P]laintiff had 120 days *from summons date* to serve [D]efendant."[8]   *Id.*   On December 6, 2005, Judge Titus, noting that Plaintiff had not received the earlier letter, granted Plaintiff's motion for reconsideration, vacated the earlier Order dismissing the case, and re-opened the case.   (Paper 9).   Judge Titus instructed Plaintiff to advise the court on or before January 6, 2006, of her intentions with regard to further issuance of process. On January 6, 2006, Plaintiff filed a request for the court to issue a new summons, which was approved by the court that same day. On January 10, 2006, a summons was issued as to Defendant. Defendant was served on January 24, 2006.

If a discrimination case is dismissed without prejudice for failure to effect service within the 120-day time period provided for in Rule 4(m), a plaintiff may likely still be barred from asserting the claim in a new suit because the 90-day statute of limitations also has expired.   *But see Irwin*, 498 U.S. at 95-96 (noting that the time period for filing a civil suit after receiving a right-to-sue letter, whether against the federal government or a private employer, is subject to waiver and

---

[8] Plaintiff proceeds *pro se*; it is unclear who Plaintiff is referring to as "counsel."

equitable tolling).    Although Plaintiff's case initially was dismissed pursuant to Rule 4(m), the dismissal was vacated.   In re-opening the case and approving Plaintiff's request for a summons on January 10, 2006, Judge Titus extended the time for service.   *See* Fed.R.Civ.P.   4(m);   Fed.R.Civ.P.   6(b)(2)   (allowing   for   an enlargement of time "upon motion made after the expiration of the specified period . . . where the failure to act was the result of excusable neglect"); *Henderson v. United States*, 517 U.S. 654, 662-63 (1996) (quoting the Advisory Committee's Notes on Fed.R.Civ.P. 4(m)) ("[I]n 1993 amendments to the [Federal Rules of Civil Procedure], courts have been accorded discretion to enlarge the 120-day period 'even if there is no good cause shown.'"); *Coates v. Shalala*, 914 F.Supp. 110, 112-13 (D.Md. 1996) ("[B]ecause plaintiff was acting *pro se* at the time and because dismissal under Rule 4(m) would effectively bar his claim, the Court, in its discretion, grants plaintiff a waiver of the consequence of Rule 4(m)."), *aff'd*, 133 F.3d 914, No. 786300, 1997 WL 786300, at *1 (4th Cir. Dec. 23, 1997) (unpublished opinion), *cert. denied*, 527 U.S. 847 (1998).   Accordingly, Plaintiff's failure to serve Defendant within 120 days does not render her discrimination claim untimely and cannot provide the basis for dismissal of the action.

**2.   Failure to Exhaust - Beyond the Scope of EEOC Charge**

**a.   Age Discrimination Claim**

Defendant maintains that because the administrative charge does not reference age discrimination, Plaintiff should not now be allowed to assert such a claim in this lawsuit.

In order to assert Title VII claims in court, "[i]t is axiomatic that a claimant under Title VII must exhaust his administrative remedies by raising his claim before the EEOC." *Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 148 (4th Cir. 1999).  There is, however, an exception to that rule.  "[T]he scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission."  *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992) (internal quotation marks omitted).  *See also Daso v. Grafton School, Inc.*, 181 F.Supp.2d 485, 489 (D.Md. 2002).  In other words, claims raised in court but not in the administrative process are procedurally barred unless they "would naturally have arisen from an investigation" of the administrative complaint.  *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995).

In her complaint, Plaintiff alleges that she was discriminated against on the basis of age.  There is no question that this claim was not included in the administrative charge and would not have naturally arisen in the course of the administrative investigation

of issues related to the claims that Plaintiff did assert.  Thus, Plaintiff is foreclosed from asserting age discrimination in this lawsuit.

**b.  Failure to Promote**

Although Defendant does not address the issue, Plaintiff appears to allege that Defendant discriminated against her when it failed to promote her.  Plaintiff states in her complaint that: "positions [she] applied for were left unfilled or were filled with non applicants while [she] was not given an interview."  Like with Plaintiff's age discrimination claim, Plaintiff's administrative charge contains no allegation that she applied for jobs and was passed over or was otherwise denied a promotion due to discrimination.  Instead, the administrative charge pertains only to the alleged "demotion" and ongoing discriminatory conditions of employment based on placement in the SP Rep position.  Plaintiff's claims regarding an alleged promotion denial would not have naturally arisen in the course of the administrative investigation regarding Plaintiff's initial assignment into the SP Rep position or the conditions of her employment as a SP Rep.  Therefore, to the extent that Plaintiff's discrimination claim is premised on a failure to promote, the claim is foreclosed because Plaintiff did not include it in her administrative charge and therefore has not exhausted her administrative remedies.

**3.   Untimely Administrative Charge - Demotion**

Unlike the age discrimination claim and the allegations pertaining to Defendant's failure to promote her, Plaintiff's administrative charge clearly encompasses her alleged demotion, when Defendant assigned her to the SP Rep position instead of the MA Rep position.   Notwithstanding its inclusion in the administrative charge, Defendant maintains that Plaintiff's charge was untimely because Plaintiff's alleged demotion occurred in 1998. Plaintiff counters that Defendant's violation is "continuing," and thus, not untimely.

"In a deferral state such as Maryland, an EEOC charge must be filed within 300 days of the date of the alleged unlawful employment practice." *Lane v. Wal-mart Stores East, Inc.*, 69 F.Supp.2d 749, 752 (D.Md. 1999) (citing 42 U.S.C. § 2000e-5(e)(1)). A demotion, transfer, or failure to promote is a discrete discriminatory act and a claimant must file a claim within 300 days of that act.   *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002); *Soble v. Univ. of Md.*, 572 F.Supp. 1509, 1515 (D.Md. 1983).

Even assuming Plaintiff was not assigned to the SP Rep position until 1999, her administrative charge was untimely because it was not filed within 300 days of the employment action.[9]   Thus,

_____

[9] As noted, it is unclear if the position restructuring and Plaintiff's assignment to the SP Rep position occurred in 1998 or 1999.

17

to the extent that Plaintiff's discrimination claim is based on her placement into the SP Rep position, it will be dismissed for failure to exhaust administrative remedies.

## 4. Retaliation Claim

Plaintiff asserts in her complaint that Defendant retaliated against her.  In *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992), the Fourth Circuit explicitly held that a separate administrative charge is not a prerequisite to a suit alleging retaliation for filing the first administrative charge.  Accordingly, to the extent that Plaintiff asserts that Defendant retaliated against her based on the filing of her initial administrative charge, Plaintiff's claim is not barred by a failure to exhaust administrative remedies.   However, Plaintiff's retaliation claim still is deficient.

To survive a motion to dismiss, a plaintiff "is not required to plead a *prima facie* case of discrimination."  *Luy v. Balt. Police Dep't*, 326 F.Supp.2d 682, 689 (D.Md. 2004), *aff'd*, 120 Fed. Appx. 465, 465 (4th Cir. 2005).  A plaintiff must, however, "allege facts that support a claim for relief."  *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), *cert. denied*, 540 U.S. 940 (2003).  To state a claim of retaliation, Plaintiff must allege that: (1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal

connection between the protected activity and the adverse action. *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997).

With regard to the second element, the Supreme Court recently has clarified what type of adverse action is sufficient to state a retaliation claim. In *Burlington N. & Santa Fe Ry. Co. v. White*, ___ S.Ct. ___, No. 05-259, 2006 WL 1698953, at *10 (June 22, 2006), the Court stated: "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." (internal quotation marks omitted).

With respect to the third element, "the employer must have taken the adverse employment action *because* the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). Thus, the employer must know about the protected activity. *Id*. Courts also look to the length of time between the employer's awareness of the protected activity and the alleged adverse employment action. *See, e.g., Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (stating that a thirteen-month lapse negated any inference of a causal connection); *Dowe*, 145 F.3d at 657 (finding no retaliation where there was a three-year time lapse).

Plaintiff has not alleged facts sufficient to support a retaliation claim with regard to either the second or third element. Plaintiff neither alleges facts showing that Defendant

took adverse actions against her following her administrative charge, nor that any adverse action was a result of Plaintiff's administrative filing.  Accordingly, Plaintiff's retaliation claim will be dismissed.  However, the court will allow Plaintiff leave to amend her complaint to state a claim of retaliation.  If Plaintiff chooses to amend her complaint, Plaintiff must allege facts sufficient to show that Defendant acted adversely against her *after* she filed her administrative claim and that this action was a result of Plaintiff's discrimination claim.

**B.  Motion for Summary Judgment**

Because the court will consider matters outside of the pleadings in its analysis of Plaintiff's claim pertaining to adverse terms and conditions of her employment and Defendant's assertion that all of Plaintiff's claims are barred by settlement, Defendant's motion will be treated as one for summary judgment pursuant to Fed.R.Civ.P. 56.

**1.  Terms and Conditions of Employment**

In the complaint, Plaintiff alleges that she is subjected to "continuing different terms and conditions of employment" due to her race, but she does not explain which terms and conditions she is referring to.  In the administrative charge, Plaintiff stated the following:

> The annual base pay of [MA Reps] is two
> thousand dollars greater than that of supply
> sales employees.  Maintenance sales employees
> are paid a commission on all sales; supply

> sales employees are paid a commission on sales
> beyond a threshold dollar amount of sales.
> Sales contracts including maintenance and
> supply sales are credited only to maintenance
> sales employees. Work hours of maintenance
> sales employees are more flexible than those
> of supply sales employees.

(Paper 18, ex. 3). As noted, to the extent that Plaintiff's claim is related to her demotion (i.e., that she was discriminated against when she was placed into the SP Rep position), it is barred for failure to exhaust her administrative remedies because her administrative charge was untimely.

Although an allegation of disparity in pay or other benefits may be considered in the nature of a continuing violation and thus survive Defendant's argument that Plaintiff's administrative claim was not filed within 300 days of the alleged act, *see Bazemore v. Friday*, 478 U.S. 385, 395-96 (1986), Plaintiff's claim still fails because she does not present a *prima facie* claim of discrimination. "As a general matter, the elements of a *prima facie* claim for discrimination under [Title VII] require the plaintiff to demonstrate that (1) [s]he is a member of a protected class; (2) [her] job performance was satisfactory; (3) [s]he suffered an adverse employment action; and (4) similarly situated employees outside [her] protected class were treated more favorably." *Luy*, 326 F.Supp.2d at 688.

Plaintiff does not proffer evidence sufficient to show that she was treated differently than other, *similarly situated*

employees working in the SP Rep job.[10]   Instead, Plaintiff's proffered comparators are employees working in a separate job, the MA Rep position.   All evidence, including those job descriptions provided by Plaintiff, shows that the SP Rep position is different from the MA Rep position in terms of the skills required and the tasks performed.   For example, a MA Rep is required to "[m]onitor and manage customer expiration reports . . .," "[p]repare quotes for customers," and "perform cost analysis of clients['] current maintenance agreements to ensure profitability."   (Paper 25, ex. 7).   Conversely, a SP Rep is required to "[c]ontact accounts to upsell and cross sell products or renew services," "[p]rocess all incoming orders in a timely manner, ensuring accuracy on all orders," and "[e]nsure accurate customer shipments and proper customer record maintenance."   (Paper 25, ex. 9).   Moreover, the MA Rep position requires, among other things, that an individual be skilled at using Excel and Word computer software programs and have proficient data entry skills.   (Paper 25, ex. 7).   In contrast, the SP Rep job requires, among other things, that an individual be "computer literate," and "sales oriented and driven."

It is not the proper role of this court to dictate how employees in different jobs must be paid, or the degree of flexibility that must be allowed in their work schedules.   *See*

---

[10] In fact, Defendant asserts, and Plaintiff does not dispute, that she is the highest paid employee in the SP Rep position.

*Causey*, 162 F.3d at 801 (noting that the court "is not in a position to second guess executive hiring decisions that are based on legitimate, non-discriminatory rationales").  Accordingly, to the extent that Plaintiff's claim is based on an alleged pay or benefit discrepancy between the SP Rep position and the MA Rep position, summary judgment will be granted to Defendant.  *See Mallory v. Booth Refrigeration Supply Co.*, 882 F.2d 908, 912-13 (4th Cir. 1989) (affirming district court's finding of no wage discrimination where there was credible evidence that the Caucasian comparators worked in different jobs); *White v. Rice*, 46 F.3d 1130, No. 94-1074, 1995 WL 20796, at *3 (4th Cir. Jan. 20, 1995) (unpublished opinion) (finding that the plaintiff failed to show that he was similarly situated to his female comparators where his job description included a particular duty that their job description did not).

## 2.  Claims Barred by Settlement

Defendant asserts that Plaintiff's acceptance of Defendant's pay increase "ratifies her agreement with [Defendant], prohibiting her from raising a discrimination claim."  In support of its contention that there was an agreement reached whereby Plaintiff waived her right to sue, Defendant proffers the affidavit of Barbara V. DeToy, Defendant's equal opportunity and affirmative action manager.  (Paper 18, ex. 2).  Ms. DeToy states that during the mediation, Defendant agreed to increase Plaintiff's grade and

base salary "to resolve the matter."  Although Plaintiff was unsure about whether to accept the offer, after the mediation Ms. DeToy, along with Mr. Rosemin, Plaintiff's supervisor, held subsequent discussions with Plaintiff.  Ms. DeToy states that "[a]s a result of these discussions, [Plaintiff] accepted [Defendant's] offer to raise her to a higher grade level and retroactively increase her base salary by $2,000 effective April 1, 2002, without any corresponding change or increase in job activity."  *Id.*  Plaintiff states in her affirmation that Defendant was aware that Plaintiff's acceptance of the change to her grade and salary increase "was not to end the legal battle."  (Paper 25, at 3).

A plaintiff must *knowingly and voluntarily* waive her right to assert a Title VII claim.[11]  *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n.15 (1974).  In *Cassiday v. Greenhorne & O'Mara, Inc.*, 220 F.Supp.2d 488, 494 (D.Md. 2002), *aff'd*, 63 F.App'x 169, No. 02-2060, 2003 WL 21186383 (4th Cir. May 21, 2003) (unpublished opinion), the court discussed the applicable standard used to review the validity of a Title VII waiver:

> Courts review the validity of a Title VII waiver under a "totality of the circumstances" standard.  *Melanson* [*v. Browning-Ferris Indus.*], 281 F.3d [272] at 276 [(1st Cir. 2002)].  This standard has been held to

---

[11] Because Plaintiff's age discrimination claim will be dismissed for failure to exhaust administrative remedies, the court need not address the requirements for a waiver of rights under the ADEA.  *See* 29 U.S.C. § 626(f); *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426-28 (1998).

> comprehend (1) the employee's education and
> business experience; (2) the respective roles
> of the employer and employee in determining
> the terms and conditions of the waiver; (3)
> the clarity of the agreement; (4) the time the
> employee had to study the agreement; (5)
> whether the employee had the advise of
> counsel; (6) whether the employer encouraged
> the employee to seek the advice of counsel and
> whether the employee had sufficient time to do
> so; and (7) the waiver's consideration. *Id*.
> at 276 n.4; *Livingston v. Adirondack Beverage
> Co.*, 141 F.3d 434, 438 (2nd Cir. 1998). This
> list of factors is non-exclusive and no single
> factor is *sine qua non*. *Melanson*, 281 F.3d at
> 276.

*Cassiday*, 220 F.Supp.2d at 494.

As noted, although the court will grant Defendant's motion to

dismiss or for summary judgment, the court will allow Plaintiff

leave to amend the complaint to state a claim of retaliation for

filing her administrative charge.  To the extent that the alleged

retaliation occurred after the mediation, it would not be barred by

settlement.  However, if the alleged retaliation occurred between

the time that the administrative charge was filed in July 2002 and

the January 2003 mediation, it is possible that Defendant asserts

that the retaliation claim is barred by settlement.  Even if this

is the case, the court need not reach the issue of whether

Plaintiff knowingly and voluntarily relinquished her right to

pursue her Title VII retaliation claim because Defendant has not

satisfied its burden of establishing that there is not an issue of

material fact with regard to any alleged agreement reached between

Plaintiff and Defendant.  Accordingly, to the extent that

Defendant's motion is based on an alleged waiver of rights, it will be denied.

## IV.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss or in the alternative, for summary judgment, will be granted.  Plaintiff will be given leave to amend her complaint with regard to the retaliation claim.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge